# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action No. 15-10628-RWZ

| | |
|---|---|
| CHRISTINA CORDA, | ) |
|   Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| SUFFOLK COUNTY DISTRICT | ) |
| ATTORNEY'S OFFICE, | ) |
|   Defendant | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

This case arises from two principal allegations: (1) plaintiff Christina Corda, who worked as an assistant district attorney (ADA) in the Suffolk County District Attorney's Office, was paid less because of her gender, and (2) she was terminated for complaining about that discrimination. After Ms. Corda learned that her salary was less than a number of male ADAs with the same or less seniority than she, she attempted over a period of months to rectify that perceived pay inequity. Ultimately, having learned that her salary was low compared to her male peers even while she was being praised for her performance, having been given the run-around for a number of months, and having heard about other incidents and allegations suggesting gender disparities, she told the Chief of Staff for District Attorney Daniel Conley on a Friday night that she believed her pay was lower because of her gender. Mr. Conley learned of that allegation the next day, and he fired Ms. Corda first thing on Monday morning. As discussed in more detail below and in Ms. Corda's accompanying statement of facts,[1] there is ample evidence for a jury to credit Ms. Corda's allegations, so summary judgment is unwarranted in this case.

---

[1] Ms. Corda incorporates by reference her separately filed Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Material Facts.

The DA's Office makes three principal arguments in seeking partial summary judgment. First, it argues that assistant district attorneys are not covered by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Because Ms. Corda's Title VII claims are duplicative of her claims under M.G.L. c. 151B, no purpose would be served by having the Court wrestle with that question, so she does not oppose that limited portion of the motion.

Second, with respect to her claim of sex discrimination under M.G.L. c. 151B, the DA's Office argues that Ms. Corda cannot prove that she was paid less because of her sex. That is wrong, as discussed below, and as set forth in Ms. Corda's detailed statement of facts. A reasonable jury, looking at the totality of the evidence, could find in Ms. Corda's favor. Moreover, the DA's Office does not move for summary judgment with respect to Ms. Corda's claims under the federal Equal Pay Act, 29 U.S.C. § 206(d) (Count V) or under the Massachusetts Equal Pay Act, M.G.L. c. 149, § 105A (Count VI), so those claims will be tried in any event.

Third, the DA's Office argues that Ms. Corda's retaliation claim must fail, because of what it points to as the "militant self-help" doctrine. The foundation for that argument is a First Circuit case that fatally undermines the defendant's position. *See Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976). Although the DA's Office represents that the case affirmed a grant of summary judgment (Defendant's Memorandum at 15), the appeal actually affirmed a district court's discretionary denial of a motion for a preliminary injunction, following a five-day evidentiary hearing. *Id.* at 225-26. In doing so, the court made clear that the reasonableness of an employee's protected conduct is a workplace-specific, fact-intensive

inquiry. *Id*. at 231. Those types of inquiries, of course, are ill-suited for summary judgment.

As importantly, there is overwhelming evidence that the DA's Office unlawfully retaliated against Ms. Corda. There is no dispute that she complained of discrimination to Mr. Conley's chief of staff, John Towle, at an office party on the night of Friday, September 19, 2014. There is no dispute that Mr. Conley was deeply troubled by that allegation. There is no dispute that Ms. Corda was sent an email the next day, ordering her to report to Mr. Conley's office on Monday morning. And there is no dispute that when she reported to Mr. Conley's office that morning, she was terminated in a brief meeting during which Mr. Conley told Ms. Corda that her allegations were "untrue" and "offensive." Although the DA's Office now suggests that Ms. Corda was terminated based on her "conduct" rather than her complaint of discrimination, there is abundant evidence to the contrary.

As a result, the defendant's motion for summary judgment should be denied. This case presents genuine issues of material fact that need to be resolved by a jury.

## Standard

To prove discrimination or retaliation under chapter 151B, a plaintiff need only show that an impermissible reason was a "determinative factor" in the adverse action. *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011) (retaliation); *Lipchitz v. Raytheon Co*., 434 Mass. 493, 505 & n.19 (2001) (discrimination). In this case, Ms. Corda alleges that her sex was a "determinative factor" in her pay, and that her complaint of discrimination was a "determinative factor" in her termination. Importantly, "[t]hat a defendant's discriminatory intent, motive, or state of mind is 'the determinative cause' does not imply the discriminatory animus was the only cause of that action." *Lipchitz*, 434 Mass. at 506 n.19 (citation omitted). Instead, it means that the animus

"contributed significantly to that action, that it was a material and important ingredient in causing it to happen." *Id*. (citation omitted).

As a general rule, cases alleging discrimination or retaliation are particularly unsuited for summary judgment, because they hinge on "factually wrought disputes" involving questions of "motive, bias, and ill sentiment." *Diaz v. Jiten Hotel Mgmt., Inc.*, 762 F. Supp. 2d 319, 326 (D.Mass. 2011). *See also Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000) ("courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent."). For this very reason, and as other courts in this District have observed when evaluating claims under Massachusetts law, Massachusetts courts disfavor summary judgment in chapter 151B cases. *See, e.g., Koss v. Palmer Fire Dist. No. One*, 53 F. Supp. 3d 416, 425 (D. Mass. 2014), *citing Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437 (1995) and *Holland v. BLH Elecs., Inc.,* 58 Mass. App. Ct. 678 (2003). The Supreme Judicial Court again underscored this point when recently reversing a trial court's erroneous grant of summary judgment in a discrimination case. *Bulwar v. Mt. Auburn Hospital*, --- Mass. ---, --- N.E.3d ---, 2015 WL 10376073 (Feb. 29, 2016). The Court emphasized that the ultimate determination of liability "is not for the court to decide on the basis of [briefs and transcripts], but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses." *Id*. at *10 (citation and internal quotation marks omitted). *See also Sullivan v. Liberty Mutual Insurance Co.*, 444 Mass. 34, 38 (2005) ("In cases involving claims of employment discrimination, a defendant employer faces a *heavy burden* if it seeks to obtain summary judgment: summary judgment is disfavored in discrimination cases based on disparate treatment because the question of the employer's state of

mind (discriminatory motive) is 'elusive and rarely is established by other than circumstantial evidence.'") (emphasis added; citation omitted).

Argument

**1. A reasonable jury could find in Ms. Corda's favor with respect to her claim of sex discrimination under chapter 151B.**

Under chapter 151B, a plaintiff alleging discrimination based on "indirect or circumstantial evidence" may prevail by using the *McDonnell Douglas* "burden-shifting paradigm." *Bulwar*, 2015 WL 10376073, at *6, *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973) (other citations and internal quotation marks omitted). At the first step, a plaintiff must provide evidence that she is a member of a protected class, that she performed her job at an acceptable level, and that she was subject to an adverse action. *Id*. Here, for example, Ms. Corda alleges that she was harmed by being paid less than men at or below her level of seniority. Second, the employer can "rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision." *Id*. (brackets in original). And, third, the burden of production then shifts back to the plaintiff to provide evidence of "pretext." *Id*. Ultimately, however, a court should focus not on isolated steps in the *McDonnell Douglas* paradigm but on the totality of the evidence. *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 26 (1st Cir. 2004) (at summary judgment, "the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a fact-finder")

To survive a motion for summary judgment, a plaintiff "need only present evidence from which a reasonable jury could infer that 'the respondent's facially proper reasons given for its action against him were not the real reasons for that action." *Id*. at 7. A plaintiff need not present

evidence that the employer's preferred explanation "constituted a pretext *concealing a discriminatory purpose.*" *Id.* at 6 (emphasis in original; citations omitted). Indeed, it has long been recognized under Massachusetts law that an employer can be liable for sex discrimination even if it did not harbor a conscious, overt bias against women. *Lipchitz*, 434 Mass. at 503 n.16 ("Employment decisions that are made *because of* stereotypical thinking about a protected characteristic or members of a protected class, whether conscious or unconscious, are actionable under G.L. c. 151B.") (emphasis in original). That is because "[s]tereotypical thinking…involves categorizing people on the basis of broad generalizations, not necessarily accompanied by deliberate reflection or conscious thought," so "an employer will not necessarily be aware of his or her bias." *Id.* Here, for example, the DA's Office may have paid women less not out of a conscious desire to treat them less favorably, but based on commonly-held stereotypes about levels of commitment, skills, or abilities.

When proving discrimination, "[t]here are many veins of circumstantial evidence that may be mined." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991). This circumstantial evidence must not be viewed in "splendid isolation," but instead should be evaluated based on its *collective* weight. *Id.* at 824. *See also Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6-7 (1st Cir. 2000) (courts must "weigh all circumstantial evidence," when evaluating summary judgment on issues of pretext and animus, "mindful that 'everything depends on individual facts.'") (internal citations omitted); *Bulwar*, 2015 WL 10376073, at *8 (in discrimination cases, evidence must be "'taken as a whole rather than viewed in isolation'") (citation omitted).

With these principles in mind, the DA's Office is not entitled to summary judgment with respect to Ms. Corda's complaint of sex discrimination under chapter 151B. As a starting point,

Ms. Corda can establish a prima facie case, because she is a woman, was performing her job at an adequate level, and can point to male ADAs with the same or less seniority and performing comparable work who were paid more than she was:

| Gender | Name | Hire Date | Unit | Pay |
|--------|------|-----------|------|-----|
| F | Christina Corda | 9/07 | Gang | $53,550 |
| M | Nicholas Brandt | 9/08 | Narcotics | $56,000 |
| M | David McGowan | 9/07 | Narcotics | $58,000 |
| M | Benjamin Megrian | 9/08 | Narcotics | $55,000 |
| M | Troy Anderson | 9/13 | Major Felony | $56,100 |
| M | Gregory Henning | 3/13 | Major Felony | $57,500 |

(Plaintiff's Statement of Additional Material Facts ("PSOF") ¶ 74).

The DA's Office argues that Ms. Corda cannot establish a prima facie case, because there was only one male ADA who was similarly situated "in all relevant aspects" – i.e., Ms. Corda's black colleague, Rilwan Adeduntan – and he was paid the same. (Defendant's Memorandum at 9-12). That argument is wrong for two reasons. First, under Massachusetts law, proof of a similarly situated comparator is not necessary to establish a prima facie case of discrimination. *Trustees of Health and Hospitals*, 449 Mass. at 682-83. Instead, a plaintiff "must simply produce sufficient evidence that [the employer's] actions, if not otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*. at 683 (citations and internal quotation marks omitted). This is not intended to be an onerous showing; on the contrary, "[i]t is meant to be a 'small showing' that is 'easily made.'" *Id*. (citations omitted). Here, the fact that the DA's Office was paying more to male ADAs with the same or less experience than Ms. Corda, *if not otherwise unexplained*, is sufficient to support a prima facie case of discrimination.

Second, when a plaintiff looks to comparators, a comparator's circumstances need not be identical to those of the plaintiff; instead, they "need only be substantially similar to those of the complainant 'in all relevant aspects' *concerning the adverse employment decision*." *Trustees of*

*Health and Hospitals*, 449 Mass. at 682 (citations omitted; emphasis added). The question is

"whether a prudent person, looking objectively at the incidents, would think them roughly

equivalent and the protaganists similarly situated…. Exact correlation is neither likely nor

necessary, but the cases must be fair congeners." *Id*. (citation omitted). In this case, the question

of what aspects are "relevant" for purposes of salary determinations – a question that goes to the

heart of Ms. Corda's pay discrimination claim – is a disputed issue that ultimately must be

resolved by the jury. As just one example, while the DA's Office argues that Ms. Corda cannot

compare herself to those "ranked" differently than she (Defendant's Memorandum at 11), there

is evidence that the Gang Unit was not ranked and that, in any event, alleged rankings did not

drive pay raises. (PSOF ¶¶ 72-73, 84-88).

It is a bit nonsensical for the DA's Office to be relying on this argument here, because

some of Ms. Corda's comparators were paid more than she even though they had less seniority

*and* were in units that are generally staffed by less-experienced prosecutors. For example, ADAs

G.H. and T.A. had less experience as prosecutors than Ms. Corda, and both were assigned to the

Major Felony Unit, which is the entry-level unit for new Superior Court prosecutors, and a unit

from which she already had been promoted. (PSOF ¶¶  12-13, 74, 81-82, 85). As a result, those

comparators should have *lower* salaries that Ms. Corda. That obviously relevant fact should not

be ignored on the grounds that those males are not similarly situated "in all relevant respects."

Turning to the second stage of the *McDonnell Douglas* analysis, the DA's Office has not

articulated sufficiently-detailed legitimate, non-discriminatory reasons for the pay disparities.

Vague explanations are insufficient, because "[a]llowing an employer to escape liability simply

by articulating vague, inoffensive-sounding subjective criteria would disserve Title VII's goal of

eradicating discrimination in employment." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977,

1009 (1988) (Blackmun, concurring). Vague explanations also deprive plaintiffs of a fair opportunity to prove pretext. *See, e.g., Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 109 (1st Cir. 1988) ("The plaintiff can hardly be expected to discredit defendant's reasons unless he possesses some understanding of what they are. Therefore, defendant must offer more than vague, general averments of good faith."); *White v. Vathally*, 732 F.2d 1037, 1042 (1st Cir. 1984) ("The purpose of requiring a defendant to articulate a legitimate, nondiscriminatory reason in this context is 'to meet the plaintiff's prima facie case' and also 'to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'") (citation omitted).

Here, the defendant has asserted that male ADAs were getting different salaries because Mr. Conley – who reviews, adjusts, and approves all pay raises for all employees (PSOF ¶¶ 55, 65) – decided to pay them differently, but that is a meaningless tautology. The relevant question is *how*, *when*, and *why* Mr. Conley decided to pay these ADAs differently. To that end, the DA's Office has provided evidence that one male ADA, N.B., received a $2,000 raise in early 2013 for taking on acting supervisory duties in the Gun Prosecution Unit. (Email [P19]). Otherwise, it has refused to provide full or specific details about why each of the male ADAs received specific increases. (PSOF ¶ 75). That refusal likely results from the manner in which pay raises are made on an annual basis – i.e., based on Mr. Conley's unchecked subjective judgment, which supposedly takes into account a slew of broad considerations (such as background, education, job performance, enthusiasm for the work, activity taken above and beyond the traditional role, work outside the office, character, integrity, and performance metrics). (PSOF ¶ 56). As courts have long recognized, of course, it is precisely that type of subjectivity that creates fertile ground for discrimination. *Sweeney v Bd. of Trustees of Keene State College*, 569 F.2d 169, 176 n.14 (1st Cir.), *vacated on other grounds*, 439 U.S. 24 (1978) ("subjective criteria contain 'no

safeguards…to avert discriminatory practices' and provide 'a ready mechanism for discrimination") (citation omitted). And the mere allegation by an employer that it relied on its subjective judgment does not serve to insulate it from claims of discrimination. *Watson*, 487 U.S. at 990-91 ("If an employer's undisciplined system of subjective decisionmaking has precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's proscription against discriminatory actions should not apply.").

Aside from its general reliance on Mr. Conley's subjective judgment, the closest the DA's Office comes in attempting to explain Ms. Corda's lower pay is (1) by belatedly denigrating her performance as merely "adequate," and (2) by offering brief snippets of biographical information about her male comparators, without detailing how various aspects of their background specifically resulted in higher pay. The defendant states, for example, that one ADA served a stint as a supervisor and "received a salary raise for the supervisor position," but it does not provide a salary history that shows when he received all raises or what the basis for those raises were. (Depo. Ex. 1 [P2] at 9).

Even if the defendant's vague explanations were sufficient to meet their burden under the *McDonnell Douglas* paradigm, Ms. Corda can point to evidence that those explanations are pretextual. For example, Mr. Conley's testimony that Ms. Corda's performance was merely "adequate" is contradicted by numerous other pieces of evidence, including his own prior statements. (PSOF ¶¶ 7-26). Likewise, as to the justifications for the salaries of the male ADAs, there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons." *Santiago-Ramos*, 217 F.3d at 55-56. For example, while Mr. Conley attempted to justify N.B.'s salary by claiming he had been in the Appellate Unit (where the starting pay is allegedly higher), that explanation is contradicted by the position

statement submitted to the MCAD, which states that he was in the Narcotics Unit, not the Appellate Unit. (PSOF ¶ 89). As another example, Mr. Conley testified that all ADAs promoted into the Superior Court start at the same salary; however, in attempting to justify the higher pay of one male comparator, he pointed to his service as a supervisor in the District Court (PSOF ¶ 90), but that should not have mattered once he was promoted to Superior Court. The record reveals similar inconsistencies or contradictions as to other male comparators. (PSOF ¶¶ 91-92). Finally, Mr. Conley's testimony about the value or role of various units – for example, that the Gang Unit is somehow less valued than other units, such as the Narcotics Unit – is contradicted by other evidence. (PSOF ¶¶ 77-80).

Evidence about the defendant's treatment of other women also supports Ms. Corda's claim. *Blare*, 419 Mass. at 447 (noting relevance of "employer's general practice and policies concerning employment of [those within the protected category]") (brackets in original; citations omitted); *Trustees of Health and Hospitals of the City of Boston, Inc. v.Mass. Comm'n Against Discrimination*, 65 Mass. App. Ct. 329, 336, *aff'd* 449 Mass. 675 (2007) ("negative treatment of several employees in the same protected class is evidence of discrimination") (citation omitted). Ms. Corda, various witnesses, and the DA's Office itself identified numerous indications of disparate treatment at the DA's Office, including both pay disparities and unequal representation in the leadership ranks. (PSOF ¶¶ 27-43). A comparison of raises with unit reports also provides indications of disparate treatment, with some lower-ranked males receiving higher raises than some higher-ranked females. (PSOF ¶ 87-88).

In short, the question at the summary judgment stage is whether a reasonable jury, based on a totality of the evidence, could find that Ms. Corda's gender was a determinative factor with respect to her pay. When all of that evidence is considered as a whole, and when all reasonable

inferences are made in Ms. Corda's favor, there is more than sufficient evidence to support her claim of sex discrimination under chapter 151B.

## 2.        Retaliation

To succeed on her claim of retaliation under chapter 151B, Ms. Corda must prove that "[she] engaged in protected conduct, that [she] suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'"  *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011), *quoting Mole v. University of Mass.,* 442 Mass. 582, 591–592 (2004) (other citation omitted). Here, Ms. Corda easily satisfies these three requirements. Indeed, there is no dispute her termination constitutes adverse action. The DA's Office focuses principally on the first element, arguing that she did not engage in "protected conduct." With respect to the third element, it indirectly contends that there was no causal connection, because (it alleges) she was fired for her "conduct" rather than her complaint. The DA's Office is not entitled to summary judgment as to either issue.

### A.        Protected Conduct

Chapter 151B makes it unlawful for, among other things, "any person [or] employer…to discharge…any person because he has opposed any practices forbidden under this chapter…." M.G.L. c. 151B, § 4(4). It is protected conduct, therefore, to oppose any discriminatory practice. There is no dispute that Ms. Corda complained of sex discrimination in her conversation with Mr. Towle. To establish that her conduct was protected, she need not prove that her allegation of sex discrimination was correct; instead, she must prove only "that [she] reasonably and in good faith believed that the [DA's Office] was engaged in wrongful discrimination." *Psy-Ed Corp.*, 459 Mass. at 707 (citations and internal quotation marks omitted; brackets in original).

In its summary judgment motion, the DA's Office stops short of arguing that Ms. Corda did not "reasonably and in good faith" believe that it was engaged in sex discrimination. And, in fact, there is ample evidence indicating that her belief was reasonable and honestly held given the totality of the circumstances. Instead of targeting Ms. Corda's belief, the DA's Office instead targets the *manner* in which she allegedly complained. That argument fails for at least two independent reasons.

First, there are genuine disputes of material fact about the manner in which Ms. Corda complained. The DA's Office points to a small sub-set of undisputed facts, wrenching them out of a broader context – i.e., that there is no dispute that Ms. Corda had multiple drinks at the party, that she had a conversation with Mr. Towle, that she complained about her pay to Mr. Towle, and that she used profanity when talking to Mr. Zanini (but not to Mr. Towle). Likewise, however, there is no dispute about other key facts that the DA's Office either omits or downplays but that put Ms. Corda's actions into context – i.e., that Mr. Towle, Mr. Zanini, Mr. Lee, and seemingly many attendees had multiple drinks; that heavy drinking is common at the DA's Office; that the use of profanity is common at the DA's Office; that Ms. Corda and Mr. Zanini regularly used profanity in their communications with each other; that Mr. Towle initiated the conversation with Ms. Corda (not vice-versa); that ADAs were encouraged to talk to executive staff (including Mr. Towle) about workplace issues; and that it was accepted practice to discuss workplace issues at social events. (PSOF ¶¶ 93-97, 102, 107-108, 118-21, 168-94). There are disputes, meanwhile, about whether Ms. Corda used profanity when talking to Mr. Towle, whether she was aggressive or hostile, whether she made "demeaning" or "derogatory" comments about a colleague, and whether Mr. Towle's offer to discuss Ms. Corda's situation later was made in good faith given his lack of time. (PSOF ¶¶ 95-96, 106-109, 112-14). And,

most significantly, there is a sharp dispute about whether or to what extent any aspects of Ms.

Corda's behavior (as opposed to her complaint of discrimination) played any role in her

termination. While the defendant characterizes Ms. Corda's interaction with Mr. Towle as

"hostile and demeaning," as an "outburst," as involving "insubordination" and "disparagement of

a colleague," and as violating accepted standards of conduct (Defendant's Memorandum at 1,

18), all of those contentions turn on disputed facts and require inferences in the defendant's

favor.

Second, chapter 151B does not require a plaintiff to prove that she conformed to a

judicially-mandated code of conduct when opposing a discriminatory practice. As discussed

above, the only "reasonableness" requirement that a Massachusetts court has clearly imposed is

that the plaintiff's *belief* was reasonable. [2]   In a case, like this, where the employer alleges that a

plaintiff was terminated for her behavior as opposed to her complaint of discrimination, the case

should turn on causation – i.e., on what motivated the employer's decision to terminate the

employee. That is, where an employer challenges *how* a plaintiff complained and alleges that it

---

[2] The Supreme Judicial Court previously described the second element of a retaliation claim to require a showing that the plaintiff "acted reasonably in response to her belief," *Tate v. Dep't of Mental Health*, 419 Mass. 356, 364 (1995), but that dicta cannot be read to establish a substantive requirement of Massachusetts discrimination law. The Court merely recited a formulation taken from a federal case (which misread First Circuit precedent, including *Hochstadt*, to impose an "acted reasonably" requirement), with no discussion of the purpose or meaning of the specific elements. *Id.*, citing *Ryan v. Raytheon Data Sys. Co.*, 601 F. Supp. 243, 247 (D.Mass. 1984). That type of naked recital of elements should not be read to establish an important element of substantive law. *See, e.g., Dartt v. Browning-Ferris Indus., Inc.,* 427 Mass. 1, 7 n.10 (1998) (noting how such a bare recital could be misleading and did not establish new law). Moreover, in its more recent decisions, the Court omitted any reference to an "acted reasonably" requirement. *See, e.g., Psy-Ed Corp.*, 459 Mass. at 707; *Mole,* 442 Mass. at 591–592 (other citation omitted). Ms. Corda is not aware of a single case in Massachusetts – at the appellate or trial level, before or after *Tate* – where a court has engaged in any analysis of the reasonableness of the plaintiff's *conduct* as opposed to *belief*. In any event, even if there were an "acted reasonably" requirement, that is not an issue appropriate for summary judgment, as discussed in the next argument.

was the conduct and not the complaint that resulted in the adverse action, the plaintiff can prevail if he shows that "the employer's desire to retaliate against [him]" was "a determinative factor in its decision to take adverse action." *Psy-Ed Corp.*, 459 Mass. at 707 (citation omitted).

Third, even if Massachusetts courts adopted *Hochstadt* under chapter 151B, summary judgment would be unwarranted. Contrary to the defendant's representation, *Hochstadt* was not a summary judgment case, and the case did not establish that "protected conduct" must be "reasonable." Instead, the district court found, *after an evidentiary hearing*, that the plaintiff had established a prima facie case of retaliation, but that her complaint failed on causation grounds. *Id*. at 226-27. That is, "[a]fter conducting the five-day hearing, listening to the testimony of seven senior scientists…, and after reviewing extensive documentary evidence," the district court credited the employer's evidence that the plaintiff was terminated for legitimate, non-discriminatory reasons. *Id*. Those reasons were based on the nature of the plaintiff's "insubordinate and excessive" protests over a period of three and one-half years, which included (1) numerous grievances that repeatedly disrupted workplace discussions and eventually led to the discontinuation of periodic meetings that had been held to discuss "policies, recruitment, and direction of research," (2) interfered with research and upset other personnel by seeking to elicit salary information from other employees, (3) circulated rumors that the employer would lose much of its federal funding because of its failure to comply with affirmative action obligations, (4) orchestrated a covert affirmative action survey under false pretenses, (5) invited a reporter to examine confidential salary information; and more. *Id.* at 227-230, 234.

The legal question presented by the case was not whether the plaintiff engaged in protected conduct or whether protected conduct must be reasonable; it was whether an employer could justify an adverse action based on *how* a plaintiff made her complaints. The court

answered, "yes," but cautioned that "it is plainly a delicate matter to separate out the protected from the nonprotected conduct." *Id.* at 229. To balance the need to protect oppositional activities with the need to preserve an employer's right to govern its workplace, the First Circuit recognized that it will depend on the "given facts," and that the "requirements of the job and the tolerable limits of conduct in a particular setting must be explored." *Id.* at 231. By definition, therefore, this requires a workplace-specific inquiry that entails a consideration of all relevant circumstances. As another district court observed when rejecting an employer's attempt to rely on *Hochstadt* at summary judgment, "*Hochstadt* obviously has no direct bearing here because the district court was called upon to make findings of fact related to the probability of success on the merits in a motion seeking a preliminary injunction, whereas factual disputes arising from the instant summary judgment motion must be resolved in favor of [the plaintiff]." *Orr v. James D. Julia, Inc.*, 2008 WL 2605569, at *11 (D. Me. June 27, 2008) *report and recommendation adopted*, 2008 WL 4057144 (D. Me. Aug. 26, 2008). For these same reasons, summary judgment is unwarranted here.

### B.     Causation

Although the DA's Office has not clearly challenged Ms. Corda's ability to prove causation, it indirectly does so by suggesting that she was terminated based on her conduct rather than her complaint of discrimination. Under chapter 151B, a "causal connection may be inferred where 'adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity.'" *Psy-Ed Corp.*, 459 Mass. at 530. *See also DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) ("temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation'"), *quoting Mariani–Colon v. Dep't of Homeland Sec. ex rel. Chertoff,* 511 F.3d

216, 224 (1st Cir. 2007). Here, Ms. Corda complained on a Friday night and was terminated the following Monday morning, thereby supporting a reasonable inference of causation under Massachusetts law.

Beyond the temporal proximity, however, there are numerous other forms of evidence from which a reasonable jury could find that Ms. Corda's complaint was a "determinative factor" in her termination – i.e., that even if it were not the only cause, it nonetheless "contributed significantly to that action, that it was a material and important ingredient in causing it to happen." *Lipchitz*, 434 Mass. at 506 n.19 (citation omitted). In addition to temporal proximity, there are two principal forms of evidence proving that Ms. Corda was terminated based on her complaint: (1) Mr. Conley's own statements and admissions, and (2) numerous indications of pretext.

Mr. Conley's incriminating statements and admissions arise from what he said when terminating Ms. Corda, what he said in his sworn statement to the MCAD, and numerous admissions during his deposition. When terminating Ms. Corda, for example, Mr. Conley reportedly told her, "Your accusations were scurrilous, completely untrue, and your integrity deeply is in question. Based upon that, you are terminated effective immediately." (PSOF ¶ 165). Indeed, in its MCAD position statement, the DA's Office admitted that Mr. Conley said to Ms. Corda when terminating her that "her allegations were untrue and offensive." (PSOF ¶ 167). The position statement also admitted that the DA's Office "was deeply troubled by [Ms. Corda's] allegations of sexism, racism, and political favoritism." (PSOF ¶ 166). Throughout his deposition, meanwhile, Mr. Conley made numerous statements indicating that he believed Ms. Corda's allegations of discrimination to be false, that she was challenging his integrity, that he

believed her (in his mind) false allegations indicated she had no integrity, and that this perceived

lack of integrity resulted in her termination. (PSOF ¶¶ 126-141).

In addition to Mr. Conley's own statements and admissions, there are various other forms

of pretext evidence, including the defendant's shifting explanations, the implausible character of

its supposed reliance on Ms. Corda's alleged intoxication and profanity, and its departure from

standard procedures when terminating her. *See Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st

Cir. 2008) ("An employer's 'different and arguably inconsistent explanations' for its challenged

employment action can serve as evidence of pretext.") (citation omitted); *E.C. Waste, Inc. v.*

*N.L.R.B.*, 359 F.3d 36, 44 (1st Cir. 2004) (pretext includes "shifting explanations for discharging

an employee"); *Santiago-Ramos*, 217 F.3d at 55-56 (pretext evidence includes "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons"); *Brennan v. GTE Government Systems Corp.*, 150 F.3d 21, 29 (1st Cir.

1998) (employer's "[d]eviation from established policy or practice may [also] be evidence of

pretext.").

First, the defendant's position has shifted over time. Initially, the DA's Office

acknowledged that Ms. Corda's complaints of discrimination played a part in her termination

(Depo. Ex. 1 [P2] at 19) ("It is clear that the Complainant's abusive and profane language *and*

accusations of sexism, racism, and political favoritism, while in an intoxicated state, are the basis

for her termination.") (emphasis added). Later, however, the DA's Office took a contradictory

position, arguing that the allegations played *no part* in her termination. (Defendant's Admissions

[P16] at 2). Likewise, while Mr. Conley's deposition testimony suggests that Ms. Corda's

allegedly false complaints of discrimination resulted in her termination (PSOF ¶¶ 127-30, 132-

34), he took the contradictory position (also during his deposition) that she was not terminated

based on those complaints. (PSOF ¶ 142). He also claimed, contrary to other evidence (PSOF ¶ 164-65, 167), that the termination meeting focused solely on her behavior (PSOF ¶ 163). The defendant's position has also shifted from placing little to no significance on Ms. Corda's alleged level of intoxication or use of profanity (as demonstrated by Mr. Towle's contemporaneous account of what happened at Depo. Ex. 67 [P11]) to emphasizing those allegations heavily (Defendant's Admissions [P16] at 2). Finally, the DA's Office has argued that Ms. Corda was terminated for violating a specific office policy (PSOF ¶ 155), but it admitted that the policy was never referenced or discussed prior to and in connection with her termination (PSOF ¶¶ 157-58).

Second, the defendant's reliance on Ms. Corda's alleged intoxication and use of profanity is not credible given the culture of the DA's Office. While the defendant relies on the fiction that ADAs are expected to act at all times as if in refined company (see, e.g., PSOF ¶ 174), there is evidence of a different reality. Based on that evidence, it is commonplace for ADAs, including some senior staff, to engage in heavy drinking (i.e., three-plus drinks at an event), to drink at lunch or in the office, and to use profanity (at work and at social events). (PSOF ¶¶ 168-194). What's more, there are no explicit rules governing this type of behavior, and no ADA has ever been disciplined based solely on their level of intoxication or use of profanity. (PSOF ¶¶ 170-171, 184, 194). When asked if Ms. Corda would have been terminated for being intoxicated and using profanity while saying she loved her job (instead of complaining about discrimination), Mr. Conley could not say whether she would have been terminated. (PSOF ¶ 161). Given this evidence, a jury reasonably could find that the defendant's attempted reliance on Ms. Corda's alleged intoxication and use of profanity is pretextual, and that is enough to support a finding in her favor. *See Lipchitz*, 434 Mass. at 499 ("Viewing the evidence in its light most favorable to the plaintiff, the evidence was sufficient to support a finding that *at least one* of the reasons

advanced by [the defendant] was false, from which the jury could have inferred that the plaintiff was [discriminated against].") (emphasis added).

Third, Ms. Corda was not accorded the same due process treatment extended to other employees. Mr. Conley testified that he likes to have as much information as possible before taking disciplinary action. (PSOF ¶ 143). For example, when one ADA violated office rules by carrying a weapon, he was given an opportunity to explain himself, and ultimately he was not disciplined. (PSOF ¶ 144). When another ADA was believed to be under the influence at work, he was given an opportunity to explain his situation, and he was ultimately given assistance. (PSOF ¶ 177). In contrast, after the Friday-night incident, Ms. Corda was never given an opportunity to explain her position or give her side of the story. (PSOF ¶ 145).

In short, there are numerous forms of evidence from which a reasonable jury could find that Ms. Corda was terminated based on her allegation of discrimination, not based on her alleged conduct. While the DA's Office will vigorously contest what all of this evidence means, a motion for summary judgment is not the appropriate forum for doing so. Indeed, this Court previously expressed skepticism when the DA's Office indicated that it was going to file a summary judgment motion in this case. As made clear by a record replete with genuine disputes of material fact, that skepticism was well grounded.

## Conclusion

For these reasons, the defendant's motion for summary judgment should be denied.

CHRISTINA CORDA
By her attorney,

/s/ Stephen Churchill
Stephen Churchill, BBO # 564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
steve@fairworklaw.com

Dated:  March 21, 2016

## CERTIFICATE OF SERVICE

I certify that I served, by the ECF system, a copy of the foregoing document on all counsel of record.

Dated:  March 21, 2016                          /s/ Stephen Churchill
                                                Stephen Churchill