UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| CHRISTINA CORDA, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:15-CV-10628-RWZ |
| v. | ) | |
| | ) | |
| SUFFOLK COUNTY DISTRICT | ) | |
| ATTORNEY'S OFFICE, | ) | |
| Defendant. | ) | |

_____)

## JOINT PRETRIAL MEMORANDUM

**A.      Concise Summary of the Evidence**

<u>PLAINTIFF</u>

Plaintiff Christina Corda worked as an assistant district attorney in the Suffolk County District Attorney's Office ("DA's Office") from 2007 until September 2014, most recently as a prosecutor in the Gang Unit.  This case arises from two principal allegations: (1) Ms. Corda was paid less than similarly-situated men, and (2) she was terminated when she complained about that discrimination.

In early 2014, after Ms. Corda learned that her salary was less than a number of male ADAs with the same or less seniority than she, she attempted over a period of months to rectify that perceived pay inequity. Ultimately, having learned that her salary was low compared to her male peers (even while she was being praised for her performance), having been given the run-around for a number of months, and having heard about other incidents and allegations suggesting gender disparities, she told the Chief of Staff for District Attorney Daniel Conley on September 19, 2014 (at a Friday night going-away party) that, among other things, she believed her pay was lower because of her gender. Mr. Conley learned of that allegation the next day, and he fired Ms. Corda

first thing on Monday morning. While the DA's Office now contends that Ms. Corda was terminated based on her alleged behavior instead of her complaint of discrimination, there is substantial evidence contradicting that position.

DEFENDANT

The DA's Office prosecutes criminal matters in Suffolk County, and at all relevant times it has employed approximately 150 assistant district attorneys. Annual budgets and expenditures for the DA's Office are set by the Massachusetts Legislature, and the District Attorney, Daniel Conley, sets the salaries of each of the assistant district attorneys as promulgated by G.L. c. 12, § 16. The evidence will show that the District Attorney has served Suffolk County since 2002. Other members of the executive staff include First Assistant District Attorney, Patrick Haggan, Chief of Staff, John Towle, and Chief Trial Counsel, John Pappas. The evidence will show that entry-level and less experienced attorneys are assigned to District Courts as assistant district attorneys throughout Suffolk County. District Court assistant district attorneys are paid in lock-step. The evidence will show that assistant district attorneys are promoted to Superior Court based upon several factors, including work performance, seniority, prior experience, needs of the DA's Office, and interests of the assistant district attorney.

The Plaintiff, Christina Corda ("Plaintiff"), was hired as a full-time assistant district attorney by the DA's Office on September 24, 2007. The September 2007 hiring class of assistant district attorneys contained 26 individuals. Plaintiff and two male assistant district attorneys were the final individuals in the September 2007 hiring class to be promoted to Superior Court in October 2011. The evidence will show that in October 2011, Plaintiff was earning a salary of $47,500.00, and she was assigned to the Superior Court's Major Felony Unit. In August 2012,

Plaintiff was promoted to the Superior Court's Gang Unit. Plaintiff worked in the Gang Unit until her termination on September 22, 2014.

The evidence will demonstrate that the DA's Office sets the salaries of its Superior Court level assistant district attorneys for each fiscal year. As a state agency, the DA's Office is dependent on allocations in funding in order to pay its employees. Once the DA's Office learns of its budget allocation for the upcoming fiscal year, it then begins the process of determining the salaries of its Superior Court level assistant district attorneys. The DA's Office will consider several factors in determining the pay of its Superior Court level assistant district attorneys, including but not limited to the individual's work performance for the prior year, the individual's seniority in the DA's Office, the individual's background and experience, and the individual's unit's performance. The evidence will demonstrate that in order to evaluate an individual's work performance, unit chiefs will prepare year-end evaluations of their units and rank the assistant district attorneys within their unit. The executive staff will also evaluate each unit independently to assess the unit's overall performance and that each unit requires different skills and criminal prosecution work. The evidence will demonstrate that the assistant district attorneys' salaries are set to reward merit and in a gender-neutral manner. The evidence will further demonstrate that Plaintiff's salary was the same as any male with her seniority performing like or comparable work.

The evidence will demonstrate that at the conclusion of the 2013 year, the Gang Unit's Unit Chief, submitted an evaluation of its assistant district attorneys. In the evaluation, two males and one female assistant district attorneys were ranked as the first tier for their performance. Plaintiff and another male assistant district attorney were ranked as the second tier for their performance. Plaintiff and this male assistant district attorney each received a raise in January 2014 that increased their annual salary to $53,550.00. Plaintiff and this other male assistant district

attorney were both hired for the DA's Office in September 2007 and were both promoted to the Superior Court at the same time.  The evidence will demonstrate that their salaries were identical at all relevant times.

The evidence will demonstrate that Plaintiff began looking at the salaries of her colleagues and felt that she should have a higher salary.  On March 10, 2014, Plaintiff requested a meeting with First Assistant District Attorney, Patrick Haggan, where she raised grievances regarding her salary in comparison to the salary of a female colleague of hers, Darcy Kofol.  Plaintiff also identified other individuals from other units who earned a higher salary than hers.  The evidence will demonstrate that Attorney Haggan told Plaintiff that her work performance was strong, but that all assistant district attorneys are underpaid.  Attorney Haggan told her he would check with the District Attorney to decide whether to give her a raise.  The evidence will show that over the next several months, Plaintiff asked Attorney Haggan for updates regarding the status of her salary request.  In July 2014, Attorney Haggan informed Plaintiff that her salary would be reevaluated for the upcoming fiscal year after the budget was set.

The evidence will next demonstrate that on the evening of Friday, September 19, 2014, a going-away party was held for a departing assistant district attorney at The Fours, a commercial establishment in Boston.  Immediately prior to attending the going-away party, Plaintiff completed and submitted a self-evaluation form that would be used in conjunction with her unit review in determining her salary for the next fiscal year.  The evidence will show that Plaintiff arrived at The Fours between 5:30 p.m. and 6:00 p.m.  Between her arrival and 9:30 p.m., Plaintiff consumed at least six alcohol beverages, including one shot of tequila, two vodka and soda mixed drinks, and three pints of pumpkin beer.

The evidence will demonstrate that at approximately 9:30 p.m., Plaintiff attracted attention to herself when she spilled a drink at the bar.  Chief of Staff Towle was situated at the corner of the bar with the chief of the Appellate Unit, Jack Zanini, and they each heard the spilled drink. Assistant district attorney Mark Lee introduced Plaintiff to the Chief of Staff, John Towle, who told Plaintiff that he had heard good things about her.  After the introduction, Plaintiff approached Chief of Staff Towle and Attorney Zanini and began expressing her anger about the salary of Attorney Kofol and disparaged Attorney Kofol as undeserving of her salary.  The evidence will demonstrate that Plaintiff used profanity and was aggressive and that she accused the DA's Office of political favoritism.  The evidence will further demonstrate that Plaintiff was repeatedly told by both Chief of Staff Towle and Attorney Zanini that the time, place, and manner of this conversation was inappropriate and that they could reconvene at a more appropriate time.  Plaintiff repeatedly ignored these directives and continued to use profanity and exhibit hostility towards Chief of Staff Towle.  Towards the end of this interaction, Plaintiff stated that her salary and the salary of a colleague were low due to her being a woman and the colleague being African-American.  Chief of Staff Towle asked Plaintiff if she was alleging racism and sexism.  Plaintiff responded "whatever" and made a disparaging remark about Attorney Kofol.  Chief of Staff Towle then left the bar.

The evidence will demonstrate that Plaintiff recognized that her conduct was inappropriate and could be subject to discipline.  Immediately after the altercation, Plaintiff began to cry. Contemporaneous text messages containing admissions by Plaintiff will demonstrate that white she lacks a memory of what was specifically said during the altercation, she admitted to being intoxicated, and admitted to being hostile to Chief of Staff Towle.  The evidence will further

demonstrate that Plaintiff was advised to apologize for her conduct and that she elected to not apologize.

The evidence will demonstrate that Chief of Staff Towle notified Attorney Haggan and the District Attorney regarding the altercation. The District Attorney requested a meeting with Chief of Staff Towle, Attorney Haggan, Attorney Pappas, and Attorney Zanini for the morning of Monday, September 22, 2014. The District Attorney also requested to meet with Plaintiff that morning. The evidence will demonstrate that the Chief of Staff Towle and Attorney Zanini provided summaries of the September 19, 2014 altercation that were consistent with each other and demonstrated the outrageousness of Plaintiff's conduct. A unanimous decision was made to terminate Plaintiff for her conduct, which included her hostility and aggressiveness, her disparagement of a colleague, and the lack of judgment and self-control that her conduct demonstrated. On the morning of Monday, September 22, 2014, the District Attorney communicated to Plaintiff that she was terminated effective immediately for her misconduct on the evening of September 19, 2014.

**B.     Stipulated Facts**

1. Ms. Corda was born on March 8, 1982.

2. Ms. Corda graduated from Suffolk Law School in May 2007.

3. Ms. Corda was hired as an Assistant District Attorney in the Suffolk County District Attorney's Office ("DA's Office") effective September 24, 2007.

4. After passing the bar exam, her annual salary was set at $37,500.

5. In April 2008, Ms. Corda's salary increased to $40,000.

6. In September 2011, Ms. Corda's salary increased to $46,500.

7.  Ms. Corda worked in the District Court until she was promoted to the Superior Court in October 2011, and her initial assignment was in the Major Felony Unit.

8.  When she was promoted to the Major Felony Unit, Ms. Corda's salary increased to $47,500.

9.  Ms. Corda was promoted to the Gang Unit in August 2012.

10. When she was promoted to the Gang Unit, Ms. Corda's salary increased to $52,000.

11. In January 2014, Ms. Corda's salary increased to $53,550.

12. Ms. Corda was terminated on September 22, 2014.

C.    **Disputed Factual Issues**

PLAINTIFF

1.  Whether Ms. Corda's gender was a determinative factor in her pay.

2.  Whether the substantive content of Ms. Corda's position was comparable to the substantive content of her male comparators.

3.  Whether the positions of Ms. Corda and her male comparators entailed comparable skill, effort, responsibility, and working conditions.

4.  Whether Ms. Corda reasonably and in good faith believed that the DA's Office was engaged in wrongful discrimination.

5.  Whether Ms. Corda's complaint of discrimination was a determinative factor in her termination.

6.  The amount of Ms. Corda's economic and emotional distress damages.

DEFENDANT

1. The DA's Office disputes that the Plaintiff can demonstrate that she was paid differently than any male assistant district attorneys who were similarly situated in all relevant aspects at any time.

2. The DA's Office disputes whether the Plaintiff can demonstrate that the DA's Office's proffered reasons for the Plaintiff's salary are pretextual.

3. The DA's Office disputes whether the Plaintiff can demonstrate that the Plaintiff's gender was a motivating factor in her salary.

4. The DA's Office disputes whether the Plaintiff can demonstrate that she performed like or comparable work to any male assistant district attorneys who had identical seniority to her and earned a higher salary than her.

5. The DA's Office disputes whether the Plaintiff can demonstrate that she performed like or comparable work to male assistant district attorneys assigned to other Superior Court units.

6. The DA's Office disputes whether the Plaintiff can demonstrate that she engaged in protected conduct on the evening of September 19, 2014.

7. The DA's Office disputes whether the Plaintiff can demonstrate that she acted reasonably on the evening of September 19, 2014.

8. The DA's Office disputes whether the Plaintiff can demonstrate that she was terminated from the DA's Office for reasons other than her conduct.

9. The DA's Office disputes whether the Plaintiff can demonstrate that she has sustained damages as a result of her termination.

**D.      Jurisdictional Questions**

The Defendant asserts that the Court may not have subject matter jurisdiction under 28 U.S.C. § 1367 on the grounds that Plaintiff is not an "employee" under Title VII or under the Fair Labor Standards Act and was not at the time the Complaint was filed.  The Defendant reserves the right to challenge subject matter jurisdiction more fully should the Court dismiss Count V, the sole remaining federal count.

**E.      Pending Motions**

<u>PLAINTIFF</u>

None.

<u>DEFENDANT</u>

The DA's Office has filed a Supplemental Memorandum of Law in Support of its Motion for Partial Summary Judgment to dismiss the Federal Equal Pay Act, 29 U.S.C. § 206(d) (Count V) because the Plaintiff is not an employee.

**F.      Issues of Law**

<u>PLAINTIFF</u>

1.  <u>Burden of Proof (Retaliation & Discrimination, M.G.L. c. 151B, § 4).</u>  To prove discrimination or retaliation under chapter 151B, a plaintiff must show that an impermissible reason was a "determinative factor" in the adverse action. *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707 (2011) (retaliation); *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 505 & n.19 (2001) (discrimination). In this case, Ms. Corda alleges that her sex was a "determinative factor" in her pay, and that her complaint of discrimination was a "determinative factor" in her termination. "That a defendant's discriminatory intent, motive, or state of mind is 'the determinative cause' does not imply the discriminatory

animus was the only cause of that action." *Lipchitz*, 434 Mass. at 506 n.19 (citation omitted). Instead, it means that the animus "contributed significantly to that action, that it was a material and important ingredient in causing it to happen." *Id*. (citation omitted).

2. <u>Unconscious Bias.</u> An employer can be liable for sex discrimination even if it did not harbor a conscious, overt bias against women. *Lipchitz*, 434 Mass. at 503 n.16 ("Employment decisions that are made *because of* stereotypical thinking about a protected characteristic or members of a protected class, whether conscious or unconscious, are actionable under G.L. c. 151B.") (emphasis in original). That is because "[s]tereotypical thinking…involves categorizing people on the basis of broad generalizations, not necessarily accompanied by deliberate reflection or conscious thought," so "an employer will not necessarily be aware of his or her bias." *Id.*

3. <u>Pretext Evidence.</u> Under Massachusetts law, if any of the explanations provided by the DA's Office is found to be prextual, then a jury may infer unlawful discrimination or retaliation. *Lipchitz*, 434 Mass. at 498-99. Ms. Corda need not prove that every explanation provided by the DA's Office was false. *Id*. at 506-507. Pretext can be proven through many forms of evidence. *See, e.g., Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir. 2008) ("An employer's 'different and arguably inconsistent explanations' for its challenged employment action can serve as evidence of pretext.") (citation omitted); *E.C. Waste, Inc. v. N.L.R.B.*, 359 F.3d 36, 44 (1st Cir. 2004) (pretext includes "shifting explanations for discharging an employee"); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55-56 (1st Cir. 2000) (pretext evidence includes "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons"); *Brennan v. GTE Government Systems Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) (employer's "[d]eviation from established policy or practice may [also] be evidence of pretext.").

4. <u>Evidence of Sex Discrimination.</u> Under Massachusetts law, a claim of sex discrimination also can be demonstrated by general statistics, *Lipchitz*, 434 Mass. at 508-509; by an employer's treatment of similarly-situated men, *Trustees of Health and Hospitals of the City of Boston, Inc. v. Mass. Comm'n Against Discrimination*, 449 Mass. 675, 682 (2007); or by evidence about the defendant's treatment of other women, *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 447 (1995).

5. <u>Elements of Retaliation.</u> To succeed on her claim of retaliation under chapter 151B, Ms. Corda must prove that "[she] engaged in protected conduct, that [she] suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'"  *Psy-Ed Corp.*, 459 Mass. at 707, *quoting Mole v. University of Mass.,* 442 Mass. 582, 591–592 (2004) (other citation omitted). There is no dispute as to the second element, because Ms. Corda was terminated. As to the third element, a "causal connection may be inferred where 'adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity.'" *Psy-Ed Corp*., 459 Mass. at 530. *See also DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) ("temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation'"), *quoting Mariani–Colon v. Dep't of Homeland Sec. ex rel. Chertoff,* 511 F.3d 216, 224 (1st Cir. 2007). As to the first element, to establish that her conduct was protected, she need not prove that her allegation of sex discrimination was correct;

instead, she must prove only "that [she] reasonably and in good faith believed that the [DA's Office] was engaged in wrongful discrimination." *Psy-Ed Corp.*, 459 Mass. at 707 (citations and internal quotation marks omitted; brackets in original). The Supreme Judicial Court previously described a retaliation claim to require a showing that the plaintiff "acted reasonably in response to her belief," *Tate v. Dep't of Mental Health*, 419 Mass. 356, 364 (1995), but that dicta cannot be read to establish a substantive requirement of Massachusetts discrimination law. The Court merely recited a formulation taken from a federal case (which misread First Circuit precedent to impose an "acted reasonably" requirement), with no discussion of the purpose or meaning of the specific elements. *Id.*, citing *Ryan v. Raytheon Data Sys. Co.*, 601 F. Supp. 243, 247 (D.Mass. 1984). That type of naked recital of elements should not be read to establish an important element of substantive law. *See, e.g., Dartt v. Browning-Ferris Indus., Inc.,* 427 Mass. 1, 7 n.10 (1998) (noting how such a bare recital could be misleading and did not establish new law). Moreover, in its more recent decisions, the Court omitted any reference to an "acted reasonably" requirement. *See, e.g., Psy-Ed Corp.*, 459 Mass. at 707; *Mole,* 442 Mass. at 591–592 (other citation omitted). Ms. Corda is not aware of a single case in Massachusetts – at the appellate or trial level, before or after *Tate* – where a court has engaged in any analysis of the reasonableness of the plaintiff's *conduct* as opposed to *belief*.

6. <u>Burden of Proof (Equal Pay Act, M.G.L. c. 149, § 105A).</u> The Massachusetts Equal Pay Act ("MEPA") provides generally that "[n]o employer shall discriminate in any way in the payment of wages as between the sexes, or pay any person in his employ salary or wage rates less than the rates paid to employees of the opposite sex for work

of like or comparable character or work on like or comparable operations." M.G.L. c. 149, § 105A. Variations in pay are not prohibited "when based upon a difference in seniority." *Id*. To prove her claim, Ms. Corda must prove: (1) that the substantive content of the two jobs (i.e., Ms. Corda's job and the job of a male comparator) is comparable in that they share "important common characteristics," and (2) that the two jobs "entail comparable skill, effort, responsibility, and working conditions." *Jancey v. School Committee of Everett*, 427 Mass. 603, 604 (1998) (citations omitted). In determining whether jobs are comparable, "the respective duties of the positions may differ in some respects," so long as they share "important common characteristics." *Id*. at 606-607.

7. <u>Burden of Proof (Equal Pay Act, 29 U.S.C. § 206(d)).</u>  To prove a claim under the federal Equal Pay Act, 29 U.S.C. § 206(d), Ms. Corda must show (1) that the DA's Office was subject to the Act, and (2) that she was paid less than male counterparts who were performing work requiring substantially equal skill, effort, and responsibilities under similar working conditions. *McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals*, 140 F.3d 288, 298 (1998). The DA's Office then must prove that the pay disparity can be explained by a legitimate factor such as seniority or performance. *Id*.


<u>DEFENDANT</u>

1.      <u>Prima Facie Case For Gender Discrimination - G.L. c. 151B</u>:  A prima facie case for gender discrimination requires the Plaintiff to show that she is a member of a protected class and has been treated disparately from similarly situated individuals who are not members of the

protected class. *See generally Lipchitz v. Raytheon Co.*, 434 Mass. 493, 498 (2001). Plaintiff "must identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently. [Plaintiff] must identify other employees to whom [she] is similarly situated in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations." *Matthews v. Ocean Spray Cranberries, Inc*. 426 Mass. 122, 129-30 (1997) (internal citations and quotations omitted). A disparate treatment case must be shown through "fair congeners. In other words, apples should be compared to apples." *Trustees of Health and Hosp. of City of Boston, Inc. v. Mass. Comm'n Against Discrimination*, 449 Mass. 675, 682 (2007) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)). As part of the prima facie case, Plaintiff must "produce sufficient evidence that [the DA's Office's] actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 45 (2005). The DA's Office argues that only male assistant district attorneys with equal seniority, substantially similar work performance, and unit assignments are similarly situated in all relevant aspects to Plaintiff.

The DA's Office contends that Plaintiff has not identified the male assistant district attorneys who she contends are similarly situated to her in all relevant aspects. The DA's Office reserves the right to move to strike any such comparators that are not similarly situated in all relevant aspects as a matter of law.

2.     Gender Discrimination Pretext Analysis - G.L. c. 151B:  Should the factfinder determine that Plaintiff makes out a prima facie case for gender discrimination, then the burden shifts to the employer "to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision." *Quinones v. Buick*, 436 F.3d 284, 289 (2006) (analyzing Title VII and G.L. c. 151B

jointly).  The DA's Office's burden is of production and not persuasion, and the proffered reasons "may be unsound or even absurd, and the action may appear arbitrary or unwise, nonetheless the [employer] has fulfilled its obligation."  *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997) (citations omitted).

The burden then returns to Plaintiff to demonstrate that the proffered reason for her salary is pretext.  It is insufficient for Plaintiff to "assert[ ] an inequity and tack[ ] on the self-serving conclusion that the defendant was motivated by a discriminatory animus."  *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992).  She must show that the proffered reason is untrue and that "the [DA's Office's] discriminatory animus was the determinative cause" of her salary. *Lipchitz*, 434 Mass. at 504.

3.   <u>Prima Facie Case For Retaliation - G.L. c. 151B</u>:  Mass. Gen. Laws c. 151B, § 4(4), prohibits an employer "to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [G.L. c. 151B, § 5]."  In order to make out a prima facie case for retaliation, Plaintiff must show that (1) she engaged in protected conduct; (2) subsequently suffered an adverse employment action; and (3) that there is a causal connection between the protected conduct and the adverse employment action.  *See*, *e.g.*, *Mole v. Univ. of Mass.*, 442 Mass. 582, 591-92 (2004).  Plaintiff must also demonstrate that "she reasonably and in good faith believed that the [DA] was engaged in wrongful discrimination, that she acted reasonably in response to her belief, and that the [DA's office's] desire to retaliate against her was a determinative factor in its decision to terminate her employment."  *Tate v. Dep't of Mental Health*, 419 Mass. 356, 365 (1995) (internal citations and quotations omitted).

The requirement that Plaintiff must act reasonably in response to her belief is not dicta, as Plaintiff claims, but rather has been adopted as an essential element of a retaliation claim by Massachusetts appellate and trial courts. *See*, *e.g.*, *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 121 (2000); *Alvarez v. City of Lowell*, 81 Mass. App. Ct. 1105 (2011); *Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo*, 2013 WL 7158045 (Mass. Super. Dec. 17, 2013). Simply because Plaintiff is not aware of a comprehensive analysis of this elements does not mean that this element does not exist. Title VII cases have analyzed the reasonableness requirement for informal complaints and the manner that they are raised. *See*, *e.g.*, *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("way in which an employee presses complaints of discrimination can be so disruptive or insubordinate that it strips away protection against discrimination"); *Buchanan v. Hilton Garden Inn Westbury*, 2008 WL 858986, *12 (E.D.N.Y. Mar. 31, 2008) ("the way informal complaints are raised can effect whether they are considered protected," and complaints that are "accusatory, confrontational and insubordinate are not protected."). There is no case law that supports Plaintiff's contention that *unreasonable* conduct is protected activity under G.L. c. 151B.

Plaintiff must also show that the protected activity was the cause of her termination. "The mere fact that one event followed another is not sufficient to make out a causal link. That an employer knows of a discrimination claim and thereafter takes some adverse action against the complaining employee does not, by itself, establish causation." *Mole*, 442 Mass. at 592. Plaintiff was an employee-at-will, and the DA's Office terminated her based on her conduct.

4.   <u>Analysis of Pretext - G.L. c. 151B Retaliation Claim</u>:  Should the factfinder determine that Plaintiff has made out a prima facie claim for retaliation, the burden shifts to the DA's Office to "produce evidence of a legitimate, non-retaliatory reason for the adverse

employment action." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 26 (1st Cir. 2012) (quotation omitted). Once that evidence is presented, then the burden will revert to Plaintiff "to prove that the real reason for the decision was retaliatory." *Id.* Plaintiff must prove her alleged protected activity was the motivating factor of her termination.

       5.    <u>Analysis of Claim - G.L. c. 149, § 105A</u>:  The Massachusetts Equal Pay Act provides that "[n]o employer shall discriminate in any way in the payment of wages as between the sexes, or pay any person in his employ salary or wage rates less than the rates paid to employees of the opposite sex for work of like or comparable character . . . provided, however that variations in rates of pay shall not be prohibited when based upon a difference in seniority." In *Jancey v. School Comm. of Everett*, 421 Mass. 482, 494 (1995), the Supreme Judicial Court Court developed a two-pronged analysis for determining whether work is of "like or comparable character" under the statute. "First, the judge must determine whether the substantive content of the jobs is comparable, that is, whether the duties of the jobs have important common characteristics." *Id.* at 489 (citation omitted). Once the judge is satisfied that this element is met, then an assessment is made "whether the two positions entail comparable skill, effort, responsibility, and working conditions. If the answer to both inquiries is 'Yes,' then employees in the two positions must receive equal pay." *Id.* at 490. The factfinder must analyze "the responsibilities and functions of each position rather than solely on the job titles" to determine if the positions are of like or comparable character. *Gu v. Boston Police Dep't*, 312 F.3d 6, 16 (1st Cir. 2002) (analyzing Federal Equal Pay Act and Massachusetts Equal Pay Act concurrently) (quotation omitted). Where the other position has "several additional responsibilities" over that of the plaintiff's position, there is insufficient evidence that the jobs were of like or comparable character. *See id.*

The DA's Office contends that Plaintiff has not identified male assistant district attorneys whom she contends were performing work of like or comparable character to her as set forth under § 105A.

6.      Analysis of Claim - 29 U.S.C. § 206(d):  The Federal Equal Pay Act prohibits "paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishments for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working condition."  29 U.S.C. § 206(d)(1).  It is not a violation of the Equal Pay Act where "the wage discrepancy resulted from (i) a seniority system, (ii) a merit system, (iii) a system measuring earning by quantity or quality of production, or (iv) a differential based on a factor other than sex." *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir. 1995).

The DA's Office contends that Plaintiff is not an "employee" under the Federal Equal Pay Act.  Federal regulations states that the Fair Labor Standards Act's ("FLSA") definition of "employee" applies to claims under the Federal Equal Pay Act.  *See* 29 C.F.R. § 1620.8.  The FLSA contains a nearly-identical definition of "employee" as Title VII that includes a "personal staff" exception.  The Tenth Circuit Court of Appeals has noted that "the definition of 'employee' under the FLSA is essentially identical to that under Title VII."  *Nichols v. Hurley*, 921 F.2d 1101, 1103 (10th Cir. 1990) (holding that deputy sheriffs were not "employees" under FLSA).

The DA's Office contends that Plaintiff has not identified male assistant district attorneys whom she contends were performing equal work to her as set forth under § 206(d).

7.      Statutes of Limitations:  The Massachusetts Equal Pay Act has a one-year statute of limitations.  *See* G.L. c. 149, § 105A.  G.L. c. 151B has a 300-day statute of limitations.  *See* G.L. c. 151B, § 5.  The Supreme Judicial Court has held that the continuing violation doctrine does not apply

to claims of pay disparity under Massachusetts law. *See Silvestris v. Tantasqua Reg. School Dist.*, 446 Mass. 756, 769-70 (2006).

8.   <u>Available Damages To Plaintiff</u>:  The DA's Office contends that Plaintiff is not entitled to recover emotional distress damages, punitive damages, or alleged loss of pension benefits.

Emotional distress damages are only awarded when they are proved by substantial evidence of the emotional suffering that occurred, as well as substantial evidence of a causal connection between the complainant's emotional distress and the respondent's unlawful act." *DeRoche v. Mass. Comm'n Against Discrimination*, 447 Mass. 1, 7 (2006).  "To be compensable, emotional distress must be proved."  *Stonehill Coll. v. Mass. Comm'n Against Discrimination*, 441 Mass. 549, 577 (2004).  A finding "of discrimination, or retaliation, is insufficient by itself, as matter of law, to permit an inference of emotional harm." *DeRoche*, 447 Mass. at 7.  While not required, "evidence in the form of some physical manifestation of the emotional distress, or evidence in the form of expert testimony . . . certainly would be beneficial."  *Stonehill*, 441 Mass. at 576.  Plaintiff is unable to establish with any admissible evidence that she suffered emotional distress.

Under G.L. c. 151B, the award of punitive damages requires a heightened standard of egregious and/or maliciousness that is not present in this case, even if Plaintiff's allegations are believed by a jury.  The Supreme Judicial Court holds that punitive damages are only awarded in cases where "a defendant knows that it has acted unlawfully with the legally protected rights of the plaintiff," or "if the defendant's act was otherwise outrageous, egregious, evil in motive, or undertaken with reckless indifference to the rights of others." *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 107-08 (2009).  There is no evidence that the DA's Office knowingly acted unlawfully or acted in a manner that was outrageous, egregious, or evil in motive.

Plaintiff contends she has been divested of the opportunity for pension benefits under the state retirement system due to her termination.  Under G.L. c. 151B, Plaintiff must prove her alleged front pay damages with "reasonable certainty."  *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 102 (2009).  A jury is not permitted to award damages based upon speculation and conjecture.  *See*, *e.g.*, *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388 (1988) ("Of course, damages may not be determined by speculation or guess.") *see also Handrahan v. Red Roof Inns, Inc.*, 43 Mass. App. Ct. 13, 24 (vacating and remanding award of front pay for 30 years because it did not "reflect the likelihood that at some point in the future the plaintiff will obtain full-time employment").  The First Circuit has noted that "[l]ost benefits are recoverable only if the plaintiff has offered evidence of out-of-pocket expenses for the same benefits."  *McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals,* 140 F.3d 288, 305 (1st Cir. 1998).  Plaintiff cannot recover for alleged lost pension benefits where she was an employee-at-will and the benefits would not have vested until 10 years of service (or September 2017).  Plaintiff cannot demonstrate loss of benefits when she has no out-of-pocket loss for these benefits.  Since she remains eligible for these benefits, Plaintiff has not incurred out-of-pocket loss.

9.   Plaintiff's Spoliation of Discoverable And Relevant Text Messages:  Plaintiff has admitted in a sworn affidavit to deleting discoverable and relevant text messages after she knew that she would be filing a suit against the DA's Office.  The DA's Office should be entitled to an adverse inference regarding the destroyed or withheld text messages.  The First Circuit has held that spoliation sanctions are appropriate where "the party who destroyed the [evidence] 'knew of (a) that claim (that is, the litigation or the potential for litigation, and (b) the [evidence's] potential relevance to that claim.'"  *Booker v. Mass. Dep't of Pub. Health*, 612 F.3d 34, 46 (1st Cir. 2010) (quoting *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998)).  Ordinarily, the party prejudiced by spoliation

of evidence is entitled to an adverse jury instruction that the juror "may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party.'" *Booker*, 612 F.3d at 45 (quoting *Testa*, 144 F.3d at 177). "This permissive negative inference springs from the commonsense notion that a party who destroys a document . . . when facing litigation, knowing the document's relevancy to issues in the case may well do so out of a sense that document's contents hurt [her] position." *Testa*, 144 F.3d at 177. The adverse inference instruction serves "to deter litigants from destroying relevant evidence prior to trial and to penalize a party whose misconduct creates the risk of an erroneous judgment." *Booker*, 612 F.3d at 46.

10.    <u>Motion to Preclude Plaintiff's Expert, Craig Moore, Ph.D.</u>:  The DA's Office will file a motion to preclude Plaintiff's economist, Craig Moore, Ph.D. from testifying.  Moore will purport to testify regarding the value of lost pension benefits to Plaintiff.  As set forth above, Plaintiff is not permitted to recover lost pension benefits.  Moore should also be precluded from testifying under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  His methodology is based upon assumptions that are inherently unreliable, and his conclusions are not reasonably drawn from the facts.

11.    <u>Miscellaneous Evidentiary Issues</u>:

The DA's Office will file motions in limine to address the following evidentiary issues:

a.  Precluding reference to alleged race discrimination (which the DA's Office categorically denies)—under Fed. R. Evid. 401 (not probative) Fed. R. Evid. 403 (unfairly prejudicial), Fed. R. Evid. 602 (not based upon personal knowledge, Fed. R. Evid. 701 (layperson opinions), and Fed. R. Evid. 801 (hearsay).

b.  Precluding reference to a perception of gender discrimination in the DA's Office— under Fed. R. Evid. 403 (unfairly prejudicial), Fed. R. Evid. 602 (not based upon

personal knowledge, Fed. R. Evid. 701 (layperson opinions), and Fed. R. Evid. 801 (hearsay); "In a disparate treatment case . . . the issue is less whether a pattern of discrimination existed and more how a particular individual was treated, and why." *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 156 (1st Cir. 1990).

c.  Precluding reference to specific alleged instances of gender discrimination involving other female assistant district attorneys—under Fed. R. Evid. 403 (unfairly prejudicial), Fed. R. Evid. 602 (not based upon personal knowledge, and Fed. R. Evid. 801 (hearsay); "In a disparate treatment case . . . the issue is less whether a pattern of discrimination existed and more how a particular individual was treated, and why." *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 156 (1st Cir. 1990).

d.  Precluding evidence regarding personal relationships between employees of the DA's Office—under Fed. R. Evid. 401 (no probative value) and Fed. R. Evid. 403 (unfairly prejudicial).

e.  Precluding evidence regarding a gun incident involving another assistant district attorney—under Fed. R. Evid. 401 (no probative value) and Fed. R. Evid. 403 (unfairly prejudicial).

f.  Precluding admission of the DA's Office's Position Statement filed with the MCAD—prepared by attorneys and should be treated as pleading under G.L. c. 231, § 87.

g.  Precluding admission of evidence relating to May 2013 meeting relating to gender concerns in the DA's Office—under Fed. R. Evid. 401 (no probative value) and Fed. R. Evid. 403 (unfairly prejudicial).

h.  Precluding admission of evidence relating to media articles and reports regarding the 2013 City of Boston mayoral race—under Fed. R. Evid. 401 (no probative value), Fed. R. Evid. 403 (unfairly prejudicial), Fed. R. Evid. 801 (hearsay).

i.  Precluding admission of evidence that the DA's Office supplies alcohol—under Fed. R. Evid. 401 (no probative value) and Fed. R. Evid. 403 (unfairly prejudicial).

The DA's Office reserves the right to file additional motions to address additional evidentiary issues

**G.   Requested Amendments**

None.

**H.   Additional Matters**

1.  Treatment of confidential exhibits and deposition testimony.

**I.   Probable Length of Trial**

6-8 days.

**J.   Witnesses**

<u>PLAINTIFF</u>

1.  Christina Corda, Boston, MA (Fact Witness)

2.  Daniel Conley, Hyde Park, MA (Fact Witness)

3.  John Towle, Hyde Park, MA (Fact Witness)

4.  John ("Jack") Zanini, Roslindale, MA (Fact Witness)

5.  Patrick Haggan, Westford, MA (Fact Witness)

6.  John Pappas, West Roxbury, MA (Fact Witness)

7.  Mark Lee, Wellesley, MA (Fact Witness)

8.  Caitlin Grasso, Somerville, MA (Fact Witness)

9.   Joshua Cummings, Brookline, MA (Fact Witness)

10. Dana Pierce, East Boston, MA (Fact Witness)

11. Christine Walsh (Fact Witness)

12. Joseph Janezic (Fact Witness)

13. Connie Valenti (Fact Witness)

14. Craig Moore, Ph.D., Southwick, MA (Expert Witness – Economic Damages)

Plaintiff reserves its right to call any of the trial witnesses identified by the defendant, and rebuttal witnesses.

## DEFENDANT

1.    Christina Corda; fact witness.

2.    Daniel Conley, 1 Bulfinch Place, Boston, MA 02114; fact witness.

3.    John Towle, 1 Bulfinch Place, Boston, MA 02114; fact witness.

4.    John Pappas, 1 Bulfinch Place, Boston, MA 02114; fact witness.

5.    Patrick Haggan, 1 Bulfinch Place, Boston, MA 02114; fact witness.

6.    Jack Zanini, 1 Bulfinch Place, Boston, MA 02114; fact witness.

7.    Joseph Janezic, 32 Belmont Street, Brockton, MA 02301; fact witness.

8.    Caitlin Grasso, 1 Bulfinch Place, Boston, MA 02114; fact witness.

9.    Mark Lee, 1 Bulfinch Place, Boston, MA 02114; fact witness.

10.   Christina Miller, 1 Bulfinch Place, Boston, MA 02114; fact witness.

11.   Darcy Kofol, 3501 Navajo Street, Denver, CO 80211; fact witness.

12.   Dana Pierce, 113 Sumner Street, Unit 45, East Boston, MA 02128; fact witness.

13.   Joshua Cummings, Boston Police Department, One Schroeder Plaza, Boston, MA 02120; fact witness.

14.   Benjamin Goldberger, Deputy Legal Counsel, Office of the Governor of the Commonwealth of Massachusetts; fact witness.

15.     Benjamin Megrian, 1 Bulfinch Place, Boston, MA 02114; fact witness.

16.     Nicholas Brandt, 1 Bulfinch Place, Boston, MA 02114; fact witness.

17.     Troy Anderson, 41 North Mogar Avenue, No. 2, Mt. Kisco, New York, 10549; fact witness.

18.     Zachary Hillman, 1 Bulfinch Place, Boston, MA 02114; fact witness.

19.     David McGowan, 1 Bulfinch Place, Boston, MA 02114; fact witness.

20.     Patrick Devlin, 19 Driftwood Road, Marblehead, MA  01045; fact witness.

21.     Vincent DeMore, 1 Bulfinch Place, Boston, MA 02114; fact witness.

22.     Gregory Henning, 1 Bulfinch Place, Boston, MA 02114; fact witness.

23.     Patrick Mulligan, 1 Bulfinch Place, Boston, MA 02114; fact witness.

24.     Scott Lukas, M.D., McLean Hospital/Harvard Medical School, 115 Mill Street, Belmont, MA 02478; expert witness (toxicology).

25.     Dana Hewins, Ph.D., 1 Tamett Brook Road, Lakeville, MA 02347; expert witness (economics).

26.     Keeper of the Records of Bretta & Grimaldi, P.A., 77 Mystic Avenue, Medford, MA 02155.

27.     Keeper of the Records of The Fours, 166 Canal Street, Boston, MA 02114.

Defendant reserves its right to call any of the trial witnesses identified by the Plaintiff, and rebuttal witnesses.

**K.     Exhibits**

STIPULATED

1.  Email (Depo. Ex. 56)

2.  Email (Depo. Ex. 57)

3.  Memo (Depo. Ex. 58)

4.  Press Release (Depo. Ex. 21)

5.  Email (Depo. Ex. 18)

6.  Email (Depo. Ex. 44)

7.  Salary Report FY12 (Depo. Ex. 8)

8.  Salary Report FY13 (Depo. Ex. 30)

9.  Salary Report FY14 (Depo. Ex. 49)

10. Salary Letter (Depo. Ex. 6)

11. Email (Depo. Ex. 37)

12. Email (Depo. Ex. 59)

13. Email (Depo. Ex. 39)

14. Email (Depo. Ex. 40)

15. Email (Depo. Ex. 43)

16. Email (Depo. Ex. 45)

17. Memo (Depo. Ex. 67)

18. Text Messages (Depo. Ex. 5) (last page of exhibit is an email, which is independently
    identified as Depo. Ex. 66 below)

19. Email (Depo. Ex. 4)

20. Text Messages (Depo. Ex. 70)

21. Email (Depo. Ex. 66)

22. Narcotics & Asset Forfeiture Unit Report (Depo. Ex. 35)

23. Major Felony Bureau Report (Depo. Ex. 36)

24. Gang/SNI Report (Depo. Exs. 55, 33)

25. Email (Def. Doc. 639-40)

NOTE:  The above exhibits are not objected to by the Defendant.  The below are proposed stipulated exhibits by the Defendant.

| | Document | Description |
|---|---|---|
| | | **Plaintiff's Document Production** |
| 26. | | Christina Corda's credit card receipt from The Fours on September 19, 2014 (1 page) |
| 27. | CC154 | Terms and Condition of employment, dated 9/18/2007 |
| 28. | CC199 | Letter from District Attorney to Plaintiff, dated 6/28/07 |
| 29. | CC266 – 379 | Suffolk County District Attorney's Office's Employee Manual |
| 30. | CC421 | Email with Rilwan Adedentun, dated 9/10/14 |
| 31. | CC434 | Christine Corda notes regarding 9/22/14 meeting with District Attorney |
| 32. | CC509 | Text with Joe Janezic, dated 9/23/14 |
| 33. | CC762 | Email with Pat Gould, dated11/17/14 |
| 34. | CC896 | State Retirement Board document, dated 12/31/13 |
| 35. | CC910 – 914 | Department of Treasury employee payroll information |
| 36. | CC919 | Bretta and Grimaldi employment offer |
| 37. | 0170 - 171 | Gang Unit SNI evaluations, dated 11/21/13 |
| 38. | 0175 - 186 | Salary Data Fiscal Year 2012 |
| 39. | 0187 – 196 | Salary Data Fiscal Year 2013 |
| 40. | 0197 – 206 | Salary Data Fiscal Year 2014 |
| 41. | 0460 | Email Patrick Haggan to John Towle 6/26/13 |
| 42. | 0586 | Form letter regarding raises, dated 1/27/14 |
| 43. | 0594 | 2011 Salary Increase Letter to Christina Corda |
| 44. | 0651 – 655 | Special Prosecutions Unit 2014 Review |
| 45. | 0656 – 675 | Appeals Unit 2014 Review |
| 46. | 0681 – 688 | Family Protection Sexual Assault Unit 2014 Review |
| 47. | 0689 – 693 | Child Protection Unit 2014 Review |
| 48. | 0724 – 725 | Senior Trial Unit 2014 Review |
| 49. | 0744 – 753 | 2014 Salary Data with Patrick Haggan |
| 50. | 0796 – 834 | Appellate Unit 2013 statistics and unit review |
| 51. | 0875 – 877 | Email from John Towle to District Attorney, dated 6/7/11 |
| 52. | 0911 – 916 | Emails between Christina Corda, Brendan Cox and Patrick Haggan regarding Superior Court promotions, October 2011 |
| 53. | 1153 – 1161 | Christina Corda W-2 statements 2007 to 2014 |

<u>CONTESTED</u>

**I.**   PLAINTIFF'S PROPOSED EXHIBITS CONTESTED BY DEFENDANT

A.     Email (Depo. Ex. 41)—Defendant objects on grounds of relevance (FRE 401) and
unfair prejudice (FRE 403)

B.     Email (Depo. Ex. 42)—Defendant objects on grounds of relevance (FRE 401) and
unfair prejudice (FRE 403)

C.     Email (Def. Doc. 244)—Defendant objects on grounds of relevance (FRE 401)

D.     List of Comparators (Depo. Ex. 11)—Defendant objects on grounds of personal
knowledge (FRE 602), layperson opinion (FRE 701), and hearsay (FRE 801-802)

E.     Corda Notes (Depo Ex. 48)—Defendant objects on grounds of hearsay (FRE 801-
802)

F.     MCAD Complaint (Depo. Ex. 2)—Defendant objects on grounds that pleadings are
inadmissible (G.L. c. 231, § 87)

G.     Position Statement (Depo. Ex. 1)—Defendant objects on grounds that pleadings are
inadmissible (G.L. c. 231, § 87)

H.     Memo (Depo. Ex. 7)—Defendant objects on relevancy (FRE 401) and that it
contains protected personnel information of uninvolved employees

I.     Spreadsheet (Depo. Ex. 34)—Defendant objects on relevancy (FRE 401) and
because document contains privileged grand jury information

J.     Memo (Def. Doc. 501)—Defendant objects on grounds of relevancy (FRE 401)

K.     Haggan Notes (Depo. Ex. 13)—Defendant objects on grounds of relevancy (FRE
401) and unfair prejudice (FRE 403)

L.     Zanini Notes (Depo. Ex. 14)—Defendant objects on grounds of relevancy (FRE
401) and unfair prejudice (FRE 403)

M.    Zanini Notes (Depo. Ex. 15)—Defendant objects on grounds of relevancy (FRE 401) and unfair prejudice (FRE 403)

N.    Email (Depo. Ex. 60)—Defendant objects on grounds of relevancy (FRE 401) and unfair prejudice (FRE 403)

O.    Email (Depo Ex. 61)—Defendant objects on grounds of relevancy (FRE 401) and unfair prejudice (FRE 403)

P.    Email (Depo. Ex. 62)—Defendant objects on grounds of relevancy (FRE 401) and unfair prejudice (FRE 403)

Q.    Email (Def. Doc. 242) – Defendant objects on the grounds of hearsay and relevancy (FRE 401)

R.    Email (Depo. Ex. 54) - Defendant objects on the grounds of hearsay and relevancy (FRE 401)

II.    DEFENDANT'S PROPOSED EXHIBITS CONTESTED BY PLAINTIFF

S.    Corda Personnel File from Bretta & Grimaldi – Relevance[1]

T.    Corda Interrogatory Answers – Relevance (no objection to reading questions and answers into evidence, in the absence of stated objections to a particular question)

U.    Letter from DA to Corda (CC1-18) – Relevance

V.    Salary Data for Christina Corda 2007-2014 – Relevance

W.    Corda Contribution to Benefit Page (CC197) – Relevance

X.    M.G.L. c. 12, § 16 – Relevance

Y.    Text with "Joe, Pat, Ed, Matt" dated 9/22/14 (CC504) – Relevance

Z.    Text with Joe Janezic, dated 9/23/14 (CC509) – Relevance

---

[1] The plaintiff's objections as to "relevance" incorporate both FRE 401 and 403.

AA.     Text with "Laura," dated 9/22/14 (CC516-17) – Relevance

BB.     Text with Rilwan Adedentun (CC539) - Relevance

CC.     Christina Corda text with Brendan (CC944) – Relevance

DD.     Christina Corda text with Kristy (CC963) - Relevance

EE.     Christina Corda text with Matt Feeney (CC998) - Relevance

FF.     Christina Corda text with Rilwan Adeduntan (CC1018) - Relevance

GG.     Christina Corda text with Rilwan Adeduntan (CC1020-21) - Relevance

HH.     Christina Corda text with Rilwan Adeduntan (CC1023) - Relevance

II.     Christina Corda text with Rilwan Adeduntan (CC1039-40) - Relevance

JJ.     Christina Corda text with Rilwan Adeduntan (CC1043) - Relevance

KK.     Email from Dan Conley, dated 9/9/14 (0174) – Hearsay, Relevance

LL.     Emails from Christina Miller 3/27/13 (0464-466) – Hearsay, Relevance

MM.     Email from Patrick Haggan to Dan Conley regarding promotions and transfers, dated 6/3/2011 (0488) – Hearsay, Relevance

NN.     Email  re Memo from Patrick Haggan, John Towle, John Pappas to Dan Conley, dated 8/28/13 (with attachment) (0490-492) – Hearsay, Relevance

OO.     Email from Connie Valenti to John Towle regarding ADAs receiving retention stipend (0493-495) – Hearsay, Relevance

PP.     Fiscal year 2014 ADA salary spreadsheet (0555-562) – Foundation, Hearsay, Relevance

QQ.     2011 List of ADA salaries for retention (591-592) – Foundation, Hearsay, Relevance

RR.     Christina Corda text messages with Joe Janezic dated 9/16/14 to 9/23/14 (0730-738) – Relevance

SS.     Christina Corda text messages with Group dated 9/19/14 to 9/20/14 (0739-743) -
        Relevance

TT.     Emails from Christina Miller regarding District Court ADA moves, dated 9/2009
        (0770-772) – Hearsay, Relevance

UU.     Emails from Christina Miller regarding District Court SNI and Superior Court
        promotions, dated 10/21/11 (0778-779) – Hearsay, Relevance

VV.     Memoranda regarding District Court ADAs by class year (0835-840) – Foundation,
        Hearsay, Relevance

WW.     Emails to and from Patrick Haggan regarding Superior Court promotions in 2011
        (0872-874) – Hearsay, Relevance

XX.     Emails between Masai King and Patrick Haggan regarding submission for
        indictment, dated 2/23/12 (0921-922) – Hearsay, Relevance

YY.     Emails from Patrick Haggan to Karen DeLoretto regarding transfers of Christina
        Corda and Rilwan Adeduntan, dated 8/9/12 (0942-944) – Hearsay, Relevance

ZZ.     Email from Vincent Demore to Patrick Haggan regarding executive summary of
        defendants and court cases involving Annie Dookhan (with spreadsheet), dated
        11/9/12 (1085-1090) – Hearsay, Relevance

AAA.    Email John Towle to Connie Valenti regarding January 2014 pay increases with
        spreadsheet (1135-1143) – Foundation, Hearsay, Relevance

BBB.    Corda of Benefits Contribution Summary (1162) – Foundation, Hearsay, Relevance

CCC.    2002-2016 ADA Hiring and Retention Table (1164-1174) – Foundation, Hearsay,
        Relevance

The parties will continue to make a good faith attempt to resolve any disagreements as to disputed exhibits.  Both parties reserve their right to identify additional exhibits in rebuttal or for purposes of completeness.

**L.    Settlement**

The parties have conferred about settlement and have not reached settlement agreement.

CHRISTINA CORDA,                           SUFFOLK COUNTY DISTRICT
BY HER ATTORNEY,                           ATTORNEY'S OFFICE,
                                           BY ITS ATTORNEYS,


/s/ Stephen Churchill                      /s/ Aaron R. White
Stephen Churchill, BBO#564158              Aaron R. White, BBO# 650918
FAIR WORK, P.C.                            awhite@BSCtrialattorneys.com
192 South Street, Suite 450                Anthony M. Campo, BBO# 552093
Boston, MA  02111                          acampo@BSCtrialattorneys.com
(617) 607-3260                             Boyle, Shaughnessy & Campo, P.C.
steve@fairworklaw.com                      695 Atlantic Avenue, 11th Floor
                                           Boston, MA 02111
                                           (617) 451-2000
                                           Fax: (617) 451-5775

DATED: 5/3/16                              DATED: 5/3/16



**CERTIFICATE OF SERVICE**

I certify that on this date I served, through the ECF system, a copy of the foregoing document on all counsel.

DATED:  5/3/16                       /s/Aaron R. White
                                     Aaron R. White